UNITED STATES of America

v.

William John GORDON, et al.

No. EP–94–CR–260–DB(4).

United States District Court,
W.D. Texas,
El Paso Division.

March 14, 1996.

Joe Galenski, Asst. U.S. Attorney, El Paso, TX, for plaintiff.

Stewart Thomas, Jennings, Louisiana, for defendants.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant's Motion to Suppress Evidence, filed on February 20, 1996, in the above-captioned cause. The Government filed a Response on March 8, 1996. The Defendant filed a Supplemental Memorandum in support of his Motion, on March 11, 1996. The Court entertained a hearing on the matter on March 11, 1996. After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons set forth below.

## FACTUAL BACKGROUND

While on patrol on Interstate–10 on February 26, 1993, Deputies Grant Willis ("Willis") and Martin Zaunbrecher ("Zaunbrecher"), of the Jefferson Davis Parish Sheriff's Department observed a 2–door Ford Explorer traveling east at approximately 65–70 miles per hour.[1] They observed the same vehicle change lanes without using a turn signal, cutting off another vehicle on the highway. Willis and Zuanbrecher pursued the Ford Explorer, activated their emergency lights and pulled the Explorer off on the shoulder of the highway.

When Willis reached the Explorer's driver's side window he noticed a strong odor of an air freshener. He also observed a large metal box in the rear of the vehicle. The occupant of the Ford Explorer identified himself as John William Gordon [sic] ("Gordon"). Willis informed Gordon of the reason for the stop, and Gordon agreed that he had failed to use his turn signal when he had changed lanes earlier. Willis requested Gordon's driver's license, which Gordon produced.[2] Willis then returned to his police cruiser and radioed the Sheriff's Department to have a computer check run on both Gordon and his vehicle. Before receiving any information, Willis exited his vehicle, again approached Gordon's vehicle and requested that Gordon step to the rear of the Explorer. Gordon complied with Willis' request.

While at the rear of the vehicle Gordon appeared nervous and began pacing back and forth. Willis gave Gordon a Warning Citation for improper lane change, which Gordon signed. Willis then asked Gordon if he was carrying any firearms, contraband, or large sums of currency, to which Gordon responded "no". At that time, Willis presented Gordon with a Permission to Search form and requested permission to search Gordon's vehicle. Gordon refused Willis's request. Willis then informed Gordon that he was free to go, but that his vehicle was going to be detained.

Approximately two minutes later, Zaunbrecher approached Gordon's vehicle with his certified K–9, Toby. Toby alerted to the presence of illegal contraband near the right rear area of the vehicle. Willis again told Gordon that he was free to leave, but that his vehicle was going to be taken to the Sheriff's Department impound lot for a further search. Gordon chose to stay with his vehicle and drove it to the Sheriff's impound lot. Willis rode along with Gordon, in the right front passenger seat.

While at the Sheriff's Department, Willis and Zaunbrecher obtained a search warrant, searched Gordon's vehicle, and discovered approximately 99 pounds of marijuana in the metal box in the rear of Gordon's vehicle.

Gordon moves this Court to suppress (1) all evidence seized from his vehicle on February 26, 1993, together with any videotapes, photographs or testimony which may be associated therewith; (2) any statements allegedly made by Gordon in conjunction with the stop, arrest, search and seizure; and, (3) any other additional evidence which may have been obtained or derived from the stop, arrest, search and seizure.

## ANALYSIS OF THE MERITS

There is no question as to the validity of Deputy Willis' initial stop of the Defendant's vehicle for improper lane change. The question in this instance revolves around whether there were circumstances present which provided a reasonable basis for a further detention of the vehicle, once the purpose of the initial stop had been concluded when Deputy Willis issued a Warning Citation to the Defendant.

▮ There are three current categories of police-citizen encounters with respect to the Fourth Amendment. This case centers around the second of those categories, an

---

1. Jefferson Davis Parish is located in the State of Louisiana. The posted speed limit on that stretch of I–10, during February, 1993, was 65 miles per hour. The Sheriff's Department cruiser was being driven by Deputy Willis. Zuanbrecher's certified K–9, "Toby" was also in the cruiser.

2. Gordon was quite nervous, to the point that his hands were shaking as he removed his license from his wallet.

investigatory stop, which is limited to a brief, non-intrusive detention. The primary case with regard to this category is *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). According to *Terry,* even in the absence of probable cause, the police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity. *See also United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In order to justify the "reasonableness" standard, an officer is required to provide specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion. *Id. See also United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A reasonable suspicion is determined from the "totality of the circumstances", *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and from the collective knowledge of the officers involved in the stop. *United States v. Cotton,* 721 F.2d 350, 352 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).

■ Here, the encounter was initiated by Willis stopping Gordon for a traffic violation. Such a stop is more analogous to a *Terry* stop than a formal arrest. *See also Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984); *United States v. Shabazz,* 993 F.2d 431 (5th Cir. 1993); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ In order for this Court to find that the detention of Gordon's vehicle was justified, it must first be determined that the officers possessed "specific and articulable" facts sufficient to create a reasonable suspi-

cion that a crime had been or was being committed. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574 and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868. In this instance, Gordon's vehicle was detained, after he was issued a Warning Citation for improper lane change, based on the fact that (1) Willis detected a strong odor of air freshener; (2) he found the large metal box in the rear of Gordon's vehicle to be suspicious; (3) Gordon's nervousness; (4) the fact that Gordon stated he had been in Houston for the three days prior to the stop and Willis could only observe one change of clothes in Gordon's vehicle; and, (5) Gordon's refusal to consent to a search of his vehicle.[3]

In *United States v. Lee,* 898 F.2d 1034 (5th Cir.1990), the Fifth Circuit outlined a list of factors which, in that case, provided a reasonable level of suspicion to justify the defendant's continued detention. Those factors include (1) the defendant's inability to produce a valid driver's license; (2) the driver's total lack of identification; (3) the large quantity of cash the defendants were carrying ($8,900.26); (4) the fact that the driver wore a pager; (5) the fact that the rental truck being used by the defendants had been rented to an unknown third party; (6) the fact that the driver lied to the officer regarding who had rented the truck; (7) the fact that the defendants disclaimed any knowledge of the contents of the cargo bay of the truck; and, (8) the defendants' contention that they did not have a key to unlock the truck's cargo bay door.

The factors cited by the officers in this instance do not approach the level of suspicion present in the *Lee* case above. Indeed, all of the factors cited by Willis and Zaunbrecher in this case are wholly consistent with legal activity, even under the totality of the circumstances test set out in *Illinois v. Gates.* Further, the fact that Gordon refused to consent to a search of his vehicle can not be turned, by the officers, into a basis for the necessary level of reasonable articulable

---

**3.** The Court notes that following Defendant's arrest, the District Attorney for Jefferson Davis Parish instituted civil proceedings to forfeit the Defendant's vehicle pursuant to Louisiana's drug asset forfeiture law in a case styled *State of Louisiana v. 1991 Ford Explorer.* The reasons for

the continued detention of Gordon's vehicle articulated by Deputies Willis and Zaunbrecher in the aforementioned case differ slightly from their testimony in the hearing regarding the instant Motion to Suppress Evidence.

suspicion. *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *United States v. Torres*, 65 F.3d 1241 (4th Cir.1995), and cases cited therein.

■ The government contends that Gordon's vehicle, and not Gordon himself, was detained. The government also argues that any detention between the time of the issuance of the Warning Citation and the running of the K–9 was minimal and did not "significantly increase the level of intrusion incurred as a result of the stop". Gvt.Resp., p. 6. The problem with this theory is that once the purpose for the stop was completed, the officers had no reasonable suspicion for further detention of Gordon's vehicle. Additionally, the detention of Gordon's vehicle effectively restrained Gordon himself because the detention relieved him of his sole means of transportation.[4] It was this type of situation in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), which led the Supreme Court to conclude that the manner in which the officers conducted the investigation exceeded the permissible limits of a *Terry* -stop.[5]

■ In this case, Willis and Zaunbrecher did not have a reasonable suspicion sufficient to detain Gordon's vehicle. It is irrelevant that the detention lasted only two minutes between the time the Warning Citation was issued and the time the K–9 was run on the vehicle. At the point that Gordon signed the Warning Citation, and refused to consent to a search of his vehicle, the encounter was over. Absent a reasonable suspicion for a continued detention of the vehicle, Gordon was free to leave the scene.

Accordingly, **IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that Defendant's Motion to Suppress Evidence is **GRANTED.**

---

4. Gordon was passing through Louisiana, from Houston, Texas, on his way to his home in Florida. The stop took place on a stretch of highway at 10:00 p.m.

5. The Court reached this conclusion even though the officers in *Place* had the requisite articulable facts causing the officers to reasonably conclude that the luggage contained contraband, and even though a dog "sniff" does not constitute a search within the purview of the Fourth Amendment.