## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Dale Lee Bohrer

September 29, 2000

Case No. (Criminal) 13267

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on September 21, 2000, for a hearing on the Motion to Suppress filed herein by the Defendant, Dale Lee Bohrer. After consideration of the evidence and the argument of counsel, the Motion to Suppress is denied for the reasons that follow.

*Facts*

Officer Michael Greene of the Leesburg Police Department was on duty the morning of April 1, 2000. He was in uniform with his weapon on his side and operating a marked police vehicle.

At approximately 10:00 a.m., Officer Greene drove by the Defendant, Dale Lee Bohrer, as he was walking on Catoctin Circle in the Town of Leesburg. Officer Greene observed the Defendant to be dressed in a dark heavy jacket that extended well below his waist, baggy jeans, and a hooded sweatshirt with the hood up and over a baseball cap. He also had on sunglasses and was carrying a back-pack. The Defendant also had something around his neck, protruding from the top of the front of the sweatshirt, but Officer Greene could not tell what it was. The Defendant was walking with his hands in the jacket pockets. Although, there was no evidence of exactly where the defendant was walking, I infer from the evidence that he was walking "on

Catoctin Circle" to be that he was walking on either the sidewalk or the street both of which are public places.

Officer Greene testified that it was "fairly warm" at the time. The Court took judicial notice, at the request of the Defendant and without objection from the Commonwealth, of the climate data from the National Weather Service indicating that on April 1, 2000, at Washington Dulles Airport the high temperature was 60 [degrees] and the low was 29 [degrees]. Although not asked by either the Defendant or the Commonwealth, the Court exercises its discretion and takes judicial notice that the Town of Leesburg is approximately 15 miles northwest of the Airport. See *Harris v. Commonwealth*, 206 Va. 882, 147 S.E.2d 88 (1966).

Other persons, observed by Officer Greene that morning, did not have on the same type of heavy clothing as the Defendant. Officer Greene was unable to tell the race of the Defendant as he drove by him.

Officer Greene drove past the Defendant and turned around and parked on another street. He turned on the blue lights of his police vehicle as he parked it. He got out of the vehicle and walked toward the Defendant as he walked toward Officer Greene. Neither Officer Greene nor his vehicle blocked the Defendant's path.

Although no evidence was presented on exactly where Officer Greene encountered the Defendant, I infer from the evidence that the Defendant was "on Catoctin Circle" when first observed by Officer Greene, that the Defendant was still "on Catoctin Circle" at the time of the encounter, and that the encounter occurred either on the sidewalk or on the street, either of which are public places. I also infer from the evidence that the pat-down of the Defendant occurred 20 to 30 feet from Officer Greene's vehicle that the encounter occurred 20 to 30 feet from the vehicle.

When Officer Greene was approximately 10 feet from the Defendant, he asked the Defendant if he could "talk to him for a second." The Defendant said, "Sure." Officer Greene asked the Defendant what he was doing. The Defendant replied that he was off work for the day, was just walking around and was not from the area.

After Officer Greene approached the Defendant, he saw that the Defendant had something that looked like an industrial mask around the Defendant's neck. As he approached and spoke to the Defendant, the Defendant still had his hands in his jacket pockets.

When asked by Officer Greene for some identification, the Defendant produced a work card from a racetrack in West Virginia, but had no other identification.

The Defendant continued to keep his hands in his pockets and close to his sides "like he was holding a weapon to keep it from bouncing around," per Officer Greene. Then, Officer Greene told the Defendant that he was going to pat him down for the officer's safety. The Defendant replied, "That's cool," which Officer Greene accepted as consent to the pat-down. When asked by Officer Greene if he had any weapons, the Defendant said, "No." Officer Greene proceeded to pat down the Defendant's exterior clothing, and found a concealed pellet gun.

During the brief encounter and up until he was patted down, the Defendant was "very talkative" and "seemed to be jittery." Officer Greene never drew his weapon.

Officer Greene was not aware if the area where he encountered the Defendant was a high crime area. There was no police lookout for the Defendant. Officer Greene had no tip that the Defendant might be engaged in any illegal activity, and he was not aware of any recent crimes in the area. He did not have any information that any bank might be robbed.

The Defendant has been indicted for the offenses of attempted armed robbery at a bank, use of a firearm while committing or attempting to commit a felony, and carrying a concealed weapon.

## Legal Analysis

The Defendant contends that the encounter between him and Officer Greene was a stop or seizure, that the officer did not have a reasonable suspicion based upon specific and articulable facts to stop the Defendant, and that the officer did not have a reasonable suspicion that the Defendant was armed and dangerous so as to warrant a pat down. I do not agree with the Defendant on any of his contentions.

As analyzed in *Iglesias v. Commonwealth*, 7 Va. App. 93, 372 S.E.2d 170 (1988), an encounter between a citizen and a police officer can fall into one of three categories for constitutional search and seizure purposes. The three categories are as follows:

1. Consensual or voluntary police-citizen encounters;
2. Brief investigatory stops (*Terry* stops); and
3. Arrests.

A consensual or voluntary police-citizen encounter occurs when a police officer approaches a citizen in a public place to ask questions, provided a reasonable person would understand that he could refuse to cooperate. *Florida*

*v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991); *Richards v. Commonwealth*, 8 Va. App. 612, 383 S.E.2d 268 (1989). The Fourth Amendment does not come into play in a consensual encounter. No constitutional violation occurs when a police officer approaches an individual and asks if he is willing to answer questions. *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). Further, acquiescence in a police request, which most citizens will do, does not negate the consensual nature of the response. *Greene v. Commonwealth*, 17 Va. App. 606, 440 S.E.2d 138 (1994).

Identifying oneself as a police officer does not convert a voluntary police-citizen encounter to a seizure, and the citizen approached may decline to speak to the police officer and go on his way. See *Royer*.

A citizen approached by the police may not be detained (seized or stopped), even momentarily, without reasonable objective grounds for doing so. A brief investigatory stop must be based on specific and articulable facts creating a reasonable suspicion that the citizen detained may be engaged in a criminal activity or has committed a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Hayes v. Florida*, 470 U.S. 811, 84 L. Ed. 2d 705, 105 S. Ct. 1643 (1985).

An arrest can only be made if there is probable cause that the person has committed a criminal offense. Only in brief investigatory stops and arrests is the Fourth Amendment applicable.

I find that the encounter between Officer Greene and the Defendant was consensual and voluntary as opposed to the Defendant being stopped or seized by Officer Greene.

Courts employ three tests to define a seizure of the person and thus distinguish it from a voluntary police-citizen encounter which is not covered by the Fourth Amendment. See R. J. Bacigal, *Virginia Criminal Procedure* (4th ed.) § 3-2.

The tests are as follows:

## 1. *Reasonable Person Test.*

A stop is defined by the objective standard of whether a reasonable person under the circumstances would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980).

*2. Submission or Touching Test.*

A seizure occurs when (1) a police officer touches, even in a minor way, the body of the accused or (2) the accused submits to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991).

*3. Intentional Means Test.*

A seizure occurs only when there is a termination of the freedom of movement of the accused by the police "through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 103 L. Ed. 2d 628, 109 S. Ct. 1378 (1989).

As to the reasonable person test, there is no evidence that a reasonable person in the Defendant's position would not have believed that he was free to leave. Contrary to what most citizens may feel when approached by a police officer, a citizen does not have to speak to the officer and can walk away. The Defendant approached Officer Greene as Officer Greene approached him. The officer did not command the Defendant to stop or come to him. Neither the officer nor his vehicle blocked the Defendant's path. He was free to leave, but he voluntarily decided not to leave and to talk to the officer. The Defendant could have refused to cooperate with Officer Greene, and such refusal, without more, would not have provided an objective justification needed for a detention or seizure. *United States v. Torres*, 65 F.3d 1241 (4th Cir. 1995).

There was no seizure or detention under the submission or touching test because the officer never touched the Defendant until the pat-down and the Defendant never submitted to any show of authority. Officer Greene never committed any show of authority so as to seize or detain the Defendant.

Because there was no termination of the Defendant's freedom of movement by Officer Greene, the intentional means test does not come into play.

For the foregoing reasons, the encounter between Officer Greene and the Defendant was a consensual or voluntary police-citizen encounter with no Fourth Amendment or *Terry* stop implications.

Even in a consensual encounter, a police officer may pat down the citizen encountered if the officer develops a reasonable suspicion that the individual may be armed and dangerous. *Reittinger v. Commonwealth*, 29 Va. App. 724, 733-34, 514 S.E.2d 775 (1999), *rev'd on other grounds* 260 Va. 232, 532 S.E.2d 25 (2000). Officer Greene had such a reasonable suspicion after talking to the Defendant and closely observing him. The Defendant's dress and

appearance would lead to a reasonable conclusion that he may be attempting to avoid being identified. A person going to commit a crime or having committed a crime would not want to be identified. The Defendant was very talkative and seemed to be jittery. Of even more significance, the Defendant continued to keep his hands in his pockets with his arms close to his sides, while he talked to the officer. It is reasonable to conclude that he may have had a weapon in a jacket pocket that he did not want to move around in order to escape detection of it. Officer Greene was justified in the pat-down.

The Motion to Suppress is denied.