**UNITED STATES of America,**

v.

**Leon MAIDEN, Defendant.**

**Crim. No. 94–0385.**

United States District Court,
District of Columbia.

Nov. 15, 1994.

Robert Lewis Tucker, Federal Public Defender for D.C., Washington, DC, for defendant.

William Barrett Wiegand, III, U.S. Attorney's Office, Washington, DC, for U.S.

**MEMORANDUM OPINION**

SPORKIN, District Judge.

This matter comes before the Court on Defendant's motion to suppress all evidence seized during a warrantless search of his residence at 1619 17th Street, S.E.,.Apt. 205 on September 12, 1994 during the night hours. While searching the apartment after Defendant's arrest, the police recovered a sawed-off Ruger .22 calibre semiautomatic rifle from the bottom of a toy box located in the bedroom. The police also recovered two thirty-round ammunition clips; one clip, load-

ed with 28 .22 calibre bullets, was found in a laundry bag and the other clip, which was empty, was found in the toy box. There were no ammunition clips loaded in the gun.

Defendant, who has no prior convictions and maintains a steady job, has been charged in a five count indictment with 1) possession of an unregistered firearm, 26 U.S.C. § 5861(d); 2) assault with a dangerous weapon, D.C.Code § 22–502; 3) possession of a prohibited weapon, a machine gun, D.C.Code § 22–3214(a); 4) possession of an unregistered firearm, D.C.Code § 6–2311(a); and 5) possession of unregistered ammunition, D.C.Code § 6–2361(3).

## FINDINGS OF FACT

On September 12, 1994, Letecha West, the mother of Defendant's children, went to Defendant's apartment building to ask Defendant for money for the children. Ms. West did not enter Defendant's apartment, but spoke to him from outside the building while Defendant stood on his second floor balcony. An argument ensued when Defendant refused to give Ms. West the requested money. As Ms. West began to leave, Defendant pointed a gun at her which she believed to be an Uzi.

Ms. West reported this incident of domestic violence to two Metropolitan Police Department officers, Officers Michael Bryant and Lamont West, who had been stationed approximately 4 blocks from Defendant's building. The officers, accompanied by Ms. West, immediately went to Defendant's apartment.

Defendant came onto the balcony of his apartment when the police arrived and Ms. West identified him as the man who had pointed the weapon at her. The officers asked Defendant if they could speak to him and if he would let them into his apartment. Defendant refused to allow the police entry into his apartment and told the police that he would talk to them from his balcony. As the police talked to Defendant, Defendant periodically left the balcony and re-entered his apartment. Believing that Defendant had just assaulted the mother of his children with a deadly weapon, the police officers became concerned that Defendant might return to

the balcony with the weapon. Due to their understandable concern based on Defendant's suspicious and belligerent behavior, the police officers called Sergeants Willie Dandridge and Vernon Gudger to the scene.

While Sergeant Dandridge spoke to Defendant, Sergeant Gudger climbed up a pipe on the side of the apartment building and onto Defendant's balcony. Sergeant Gudger entered the apartment and let the other three officers, as well as Ms. West, into the apartment through the front door.

Defendant was arrested and handcuffed. The police then conducted a search of the entire apartment and the gun and ammunition clips were recovered. At no point did the police obtain a search warrant.

## ANALYSIS AND DECISION

### ARREST

■ The Fourth Amendment protects persons from unreasonable searches and seizures. An arrest, the seizure of a person, must be based on probable cause. An officer has probable cause to effectuate an arrest when at the time of the arrest, the officer has within his knowledge facts and circumstances of which he has reasonably trustworthy information that would warrant a reasonably prudent person to believe that the suspect had committed a crime. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). In this case, the officers had probable cause to arrest Defendant Maiden based on the report of Ms. West that he had assaulted her with a deadly weapon as well as the officer's observations of Defendant's erratic behavior on the balcony as they spoke to him.

■ Police generally do not need an arrest warrant to arrest a person in a public place. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). On the other hand, to arrest a person in his home in a non-emergency situation, the police must have a warrant. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Although Defendant was in his home at the time of the arrest, exigent circumstances justified the arrest of Defendant without a warrant. *Welsh v. Wis-*

*consin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (delineates exigent circumstances exception). When the police arrived on the scene during the night hours of September 12, 1994, Defendant was towering above the police officers on his balcony with free access to his apartment where the police reasonably believed that he had an Uzi that he had just pointed at the mother of his children. Defendant was acting strangely and refusing to talk to the police in a rational manner. Innocent people slept in the neighboring apartments. The safety of the police and the public required that the Defendant be apprehended. The police officer acted prudently in arresting the defendant.

## SEARCH

 Searches conducted without a search warrant are deemed to be presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The exceptions that have developed to the search warrant requirement have been "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). One exception to the requirement is the presence of exigent circumstances. *United States v. McEachin*, 670 F.2d 1139, 1144 (D.C.Cir.1981).

 The government argues that exigent circumstances justified the warrantless search that occurred in this case. The Court believes that the search of the entire apartment without a warrant exceeded the proscriptions of the Fourth Amendment. Certainly the police had the right to search Defendant's immediate surroundings once the arrest was effected. For their own protection, the police had to make sure that the premises had been secured. But, once Defendant Maiden was arrested and handcuffed, there were no longer any exigent circumstances that necessitated the complete search of the apartment without a warrant. Defendant Maiden had been subdued and there were no other persons in the apartment who the police believed would use the weapon in a hostile manner.[1] At this stage, it was incumbent on the police to obtain a search warrant so that the premises could be completely and fully searched. While one might argue requiring the police to obtain a warrant late at night would be impossible and an administrative nightmare, this Court is familiar with procedures that have been established to be able to obtain search warrants telephonically while they remain on the premises with the Defendant in custody.[2]

## CONCLUSION

Guns and their prevalence in domestic violence are reason for alarm. The police responded appropriately to Ms. West's reporting of an assault with a deadly weapon when they went directly to Defendant's apartment. Their warrantless arrest of Defendant Maiden in his home was constitutionally valid under the circumstances. But once Defendant Maiden had been arrested and the premises secured, the exigency disappeared. At this point, to proceed to a full search of the apartment required the obtaining of a search warrant. The Court finds that the search of the premises at large was in violation of the Fourth Amendment protection against unreasonable searches and seizures. The gun and the ammunition clips will be suppressed. An appropriate order accompanies this memorandum opinion.

---

1. The only other individuals in Defendant Maiden's apartment were the four police officers and Ms. West.

2. The facts in *United States of America v. Carlos Mason*, Crim. No. 94–240, were that after the apartment was secured and before a further search of the premises occurred, a search warrant was obtained at the instruction of the U.S. Attorney's Office:

> After recovering the weapon, Detective Thomas requested that defendant and his brother go to the living room. At this point, Ms. Jones executed a consent to search form. Even though Ms. Jones voluntarily gave her consent to search the premises, Detective Thomas decided to confer with the U.S. Attorney's Office to determine how to proceed. At the instruction of the U.S. Attorney's Office, a search warrant was applied for and obtained.

*United States of America v. Carlos Mason*, Crim. No. 94–240, Memorandum Opinion, September 21, 1994.