**UNITED STATES of America, Plaintiff,**

v.

**Tajuan Marnez WILLIAMS, Defendant.**

**No. CRIM.00–50027.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 30, 2000.

W. Otis Culpepper, Detroit, MI, Kenneth S. Karasick, Flint, MI, for defendant.

Robert W. Haviland, U.S. Attorney's Office, Flint, MI, for plaintiff.

## ORDER

GADOLA, District Judge.

Before the Court is a motion by Defendant Tajuan Marnez Williams to suppress evidence. For the reasons stated below, the Court grants Defendant's motion.

### Factual Background

During the night of March 24, 2000, City of Flint police Officers Keith Motley and Felix Trevino stopped an auto driven by Defendant and occupied by Antonio R. Key because Officers Motley and Trevino had been notified by Officer Robert Smith, who was patrolling for drug activity in an unmarked vehicle, that Officer Smith had observed Defendant commit several traffic violations. Once Officers Motley and Trevino effected the stop of Defendant, Officer Smith joined them.

Officer Smith then approached the driver's side of Defendant's vehicle and asked for Defendant's driver's license and registration, which Defendant provided. Upon looking at Defendant's license, Officer Smith states that he recognized Defendant's name as being that of a person who, according to a confidential informant known to Officer Smith, was involved in narcotics trafficking and known to carry a firearm. Officer Smith then walked away from Defendant's car to a police vehicle, from which he checked the names of Defendant and Mr. Key through the Law Enforcement Information Network (LIEN). The LIEN check uncovered no information about either Defendant or Mr. Key. Officer Smith then wrote a traffic citation for Defendant, walked backed to Defendant's auto, and handed Defendant the ticket. At this point, according to Officer Smith, the traffic stop was completed.

Although Officer Smith did not see any indicia of narcotics dealing at this juncture, Officer Smith continued to detain Defendant for approximately five to ten minutes after completion of the traffic stop so that a canine unit could arrive and a dog could sniff Defendant's vehicle for drugs. During this time Officer Smith asked Defendant whether Defendant had drugs or weapons in the auto. Defendant answered that he had neither. Officer Smith also asked Defendant for consent to search the auto, which Defendant refused. Defendant appeared nervous during this period, according to Officer Smith. In order to facilitate the canine sniff, Officer Smith then ordered Defendant and Mr. Key out of the vehicle. Both men complied. Officer Smith then proceeded to pat-down Defendant for weapons, and Officer Motley did likewise to Mr. Key.

While Officer Motley was bending down to frisk Mr. Key on the passenger's side of the car, Officer Motley observed a handgun protruding from under Defendant's driver's seat. He then yelled "gun!" Shortly thereafter, Officer Smith felt what he believed to be a firearm magazine on Defendant's person. The officers' ensuing search of Defendant and Defendant's auto produced a 9 mm. semiautomatic pistol and two loaded magazines that fit the pistol. The officers then placed Defendant under arrest for carrying a concealed weapon, and took him the City of Flint's jail. The government later obtained an indictment of Defendant for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

### Discussion

Defendant's motion raises two issues under the Fourth Amendment: (1) the validity of the officers' initial stop of Defendant's auto; and (2) the validity of the officers' continued detention of Defendant after the completion of the traffic stop.

Regarding the first issue, the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Detention of the occupants of an automobile during a police stop of the vehicle, regardless of the limited purpose and duration of the stop, is a "seizure" of persons within the Fourth Amendment, and must therefore be reasonable. *See, e.g., Whren v. United States,* 517 U.S. 806,

809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Such a stop is reasonable under the Fourth Amendment when the officer has probable cause to believe that the driver has committed a traffic violation. *See id.* at 810, 116 S.Ct. 1769. This principle is valid regardless of any subjective intentions the police may have also to investigate another offense during the stop. *See id.* at 813, 116 S.Ct. 1769; *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993) (citation omitted).

■ In this case, the police officers' uncontradicted testimony was that Defendant had, *inter alia,* been speeding and had failed to signal before making a turn. Such observations are adequate to give the police probable cause to believe that a driver has committed a traffic violation. *See, e.g., id.* at 389 (affirming the district court's finding that a policeman's observation that the defendant was swerving created probable cause to believe that the defendant had violated a motor-vehicle statute). I thus conclude that the police had probable cause to believe that Defendant committed at least one traffic violation, and that the initial stop of Defendant's vehicle was therefore valid under the Fourth Amendment.

■ I now turn to the question of whether the officers' continued detention of Defendant after the completion of the traffic stop was valid under the Fourth Amendment. Once the purposes underlying a traffic stop are terminated, the police must not continue to detain a vehicle or its occupants absent facts that give rise to a reasonable suspicion of some other violation of the law. *See United States v. Mesa,* 62 F.3d 159, 162 (6th Cir.1995); *Charity v. State,* 132 Md.App. 598, 753 A.2d 556, 564 (2000) (reasoning that "[a]t the moment when Trooper Smith returned Ferris's driver's license and registration

card to him and handed Ferris a copy of the speeding citation, the initial traffic stop came to an end. It could no longer serve as a Fourth Amendment justification for anything that followed."); *see also United States v. Freeman,* 209 F.3d 464, 470 (6th Cir.2000) (Clay, J., concurring) (noting that "the limits on police officers to detain and search based upon reasonable suspicion incident to a traffic stop must be sharply drawn so that [police] do not extend the detention and increase the extent of their search until they find conclusive evidence of" a legal violation). Whether reasonable suspicion existed hinges on whether, considering the totality of the circumstances, the police had "articulable reasons" and "a particularized and objective basis for suspecting [the Defendant] of criminal activity." *United States v. Payne,* 181 F.3d 781, 788 (6th Cir.1999) (citation omitted).

■ During the evidentiary hearing, the government provided three factors that, it argues, gave the officers reasonable suspicion that Defendant had committed a narcotics or weapons offense: (1) Defendant's driving behavior; (2) Defendant's nervousness; and (3) the information provided by a confidential informant known to Officer Smith.[1] The Court knows of no authority for the proposition that traffic violations such as speeding or failure to signal are indicia that a motorist has drugs or a weapon, and thus places no weight on the government's first factor.

■ Regarding Defendant's nervousness during the encounter with the officers, "nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself." *Mesa,* 62 F.3d at 162 (citing cases). I must therefore consider whether Defendant's nervousness, in conjunction with the information provided by

---

1. In the government's written response to Defendant's motion to suppress, the government maintains that the information provided by Officer Smith's informant "was not the basis for the stop at all, but only for the frisk." (Gov't Resp. at 2.) (emphasis in original). The Court will nonetheless assess whether the informant's tip could have justified the continued detention of Defendant and his auto after the purposes of the traffic stop had terminated.

the informant, created reasonable suspicion that Defendant was involved in illegal activity regarding narcotics or weapons.

 Whether a tip gives rise to reasonable suspicion depends on the tip's contents, *see Payne*, 181 F.3d at 789, and origin. Courts typically find that reasonable suspicion existed when (1) the police have corroborated aspects of a detailed tip, or (2) the informer had a record of providing reliable information. *See id.* at 790.

In this case, Officer Smith testified that the informer stated that Defendant trafficked in drugs. Both parties stipulated during the evidentiary hearing that the informer also mentioned Defendant's alleged propensity to carry a firearm. This is the full extent of what the Court knows about the informant's tip.

There is nothing in the record, therefore, that would place this case in the former category; i.e., the Court cannot conclude that the tip was detailed. As far as the record reveals, the informant merely asserted that Defendant committed narcotics offenses and carried a weapon, without providing facts to corroborate the accusation and without predicting any future occurrences that the police could monitor to provide corroboration. A tip such as this is generalized, and not detailed. *See id.* at 790; *Daugherty v. Campbell*, 33 F.3d 554, 557 (6th Cir.1994) (reasoning that an accusation without supporting facts was not detailed). The record also reveals nothing that would place the tip upon which the police relied in the latter category either: the Court simply has no information that would suggest Officer Smith's informant has a record of providing reliable information.

What the government is left with to support its claim of reasonable suspicion, therefore, is an informant's bald accusation that Defendant trafficked in illegal drugs and carried a weapon, coupled with Defendant's apparent nervousness when the police stopped his vehicle. I conclude that, without more, these factors are nebulous and do not equate to a "particularized and objective basis for suspecting" Defendant of criminal acts; i.e., reasonable suspicion did not exist. I therefore must find that the police's continued detention of Defendant and his vehicle after the purposes of the original traffic stop had terminated violated the Fourth Amendment. Because the police could not have observed the pistol under Defendant's seat, or eventually patted down Defendant, without that continued detention, I am compelled to exclude the pistol and magazines as the fruit of an unconstitutional search. *See Hayes v. Florida*, 470 U.S. 811, 813–14, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (suppressing the fruits of an unlawful detention).

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's motion to suppress is **GRANTED.**

**SO ORDERED.**