Linda AWDISH, Plaintiff,

v.

**Chuck PAPPAS, James Mueller, Gregory Edwards, Donald Hughes, and John Doe # 1, Defendants.**

No. Civ. 99–40333.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 15, 2001.

Frank D. Eaman, Harper Woods, MI, Paul H. Johnson, Jr., Robert L. Mott, Jr., Southfield, MI, Paul Vincent, Troy, MI, for plaintiff.

Lori G. Bluhm, City of Troy, Troy, MI, William L. Woodard, United States Attorney's Office, Detroit, MI, for defendants.

### OPINION and ORDER

GADOLA, District Judge.

Before the Court is Defendants' renewed motion for summary judgment [docket entry 45]. Having considered the parties' written submissions and having entertained oral argument in open court on August 1, 2001, the Court will grant Defendants' motion for the reasons set forth below.

## I BACKGROUND

■ Defendant Chuck Pappas is a City of Troy, Michigan policeman. Defendant James Mueller is a special agent for the U.S. Drug Enforcement Administration ("DEA"). Defendant Gregory Edwards is an investigator with the City of Detroit Police Department. Defendant Donald Hughes is an investigator with the City of Detroit Police Department. All named Defendants were members of the "RED-RUM" Task Force operated by the Detroit Field Division Office of the DEA. The Task Force investigates narcotics-related murders in and near Detroit. Defendant "John Doe # 1" is a City of Novi police officer whom Plaintiff could not identify when she filed her complaint.[1]

On August 25, 1997, Defendants participated in the warrantless arrest[2] of Plaintiff for the murder of Salwan Asker. Police effected Plaintiff's arrest after receiving information from confidential informants, discussed *infra*, and with the knowledge that Mr. Asker had testified against two of Plaintiff's relatives in a criminal case. After arresting Plaintiff, police applied handcuffs to Plaintiff's wrists and took Plaintiff to Detroit Police Headquarters. At police headquarters, Defendants participated in the interrogation of Plaintiff.

After they had detained Plaintiff for roughly twenty-seven hours, and after

---

1. Because discovery is closed and Plaintiff is still unable to identify "John Doe # 1," the Court must dismiss John Doe # 1 from this case. *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D.Mich.2001) (Gadola, J.).

2. Plaintiff was driving her car in Novi, Michigan when she was arrested. Because she was in a public place, police did not need a warrant to arrest Plaintiff. *United States v. Maiden*, 870 F.Supp. 359, 360–61 (D.D.C.1994).

Plaintiff had passed a succession of polygraph examinations, police released Plaintiff from custody. Neither Plaintiff nor anyone else has, to date, been charged with a crime in relation to the death of Salwan Asker.

On April 24, 2000, Plaintiff filed her third amended complaint arising from this course of events. Plaintiff alleges two causes of action. First, she alleges that Defendants seized her unlawfully in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. Second, she alleges that Defendants conspired to violate her rights under the Fourth and Fourteenth Amendments. Plaintiff sues each Defendant in his individual and official capacities. Defendants now move for summary judgment as to both of those claims.

## II LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-

moving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548;

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 150 (6th Cir.1995).

## III ANALYSIS

 Defendants argue that the doctrine of qualified immunity prevents Plaintiff from reaching a jury with her claims. When ruling upon a governmental actor's assertion of qualified immunity from suit, the Court must resolve two distinct, sequential questions. *Saucier v. Katz*, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The plaintiff bears the burden of demonstrating that the answer to each of the following two questions is affirmative. *See, e.g., Hansen v. Lamontagne*, 808 F.Supp. 89, 92 (D.N.H.1992).

First, the Court must decide whether the facts, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Saucier*, 121 S.Ct. at 2156. In answering this inquiry, the Court might have to enunciate principles that would, prospectively, form the "basis for holding that a right is clearly established."

A negative answer to this question would end the inquiry in the defendant's favor; an affirmative answer would re-quire the Court to address the second and final issue: whether the right was clearly established. *Id.* For a right to be clearly established, the determinative inquiry "is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). If the Court were to decide that the right allegedly violated was not clearly established, the doctrine of qualified immunity would shield the defendant from suit. The Court's conclusion that the right was clearly established, conversely, would mean that qualified immunity is no obstacle to a continuation of the suit.

Because the purpose underlying qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," the Court must rule on a defendant's assertion of qualified immunity early in the proceedings. *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

### A. Whether, Viewing the Evidence in the Light Most Favorable to Plaintiff, Defendants Violated Any of Her Rights

The Court now turns to the issue of whether the facts, taken in the light most favorable to Plaintiff, show that Defendants' conduct violated a constitutional right. Plaintiff argues for an affirmative answer to this question because, in her view, Defendants violated clearly established constitutional rights by: (1) "arresting her without probable cause on August 25, 1997"; (2) "detaining her overnight"; (3) "verbally harassing her"; and (4) "denying her permission to contact her family to advise them of her whereabouts." (Pl. Resp. at ¶ 1.)

### i. Whether Plaintiff's Claim Based on Her Alleged Arrest and Detention Without Probable Cause Survives Defendants' Assertion of the Doctrine of Qualified Immunity

 The Fourth Amendment prohibits a warrantless arrest without probable cause. Probable cause exists when the "facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Usually, the existence of probable cause is a question of fact. *Id.*

Defendants argue that, viewing the facts in the light most favorable to Plaintiff, they still had probable cause to effect her arrest for the murder of Salwan Asker. For this proposition, Defendants rely on the following factors:

1. On April 10, 1997, the body of Salwan Asker was found lying in the street in Detroit, Michigan, during the middle of the night. (Exhs. 3–6: Answers to Interrogs. No. 16; Attachments A and C to Keefe Declaration).

2. The autopsy of Salwan Asker's body showed that he had been shot in the back of the head at close range, consistent with an execution style murder. (Exhs. 3–6: Answers to Interrogs. No. 16; Attachments A, C, D, and M to Keefe Declaration).

3. During the early 1990's Salwan Asker, the deceased, had testified against several members of the Kalasho drug trafficking organization in Detroit, Michigan. DEA relocated Asker out of state for reasons of personal and family safety due to a fear of retaliation in response to his having testified against the Kalasho organization defendants. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments A, C, D, E, H, and L to Keefe Declaration).

4. The Kalasho drug-trafficking organization was extremely violent, and was deemed responsible for multiple death threats, acts of harassment, and murders. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments C, D, and H to Keefe Declaration).

5. Plaintiff had at least two close relatives, a brother and a cousin, who were members of the Kalasho organization. These relatives were prosecuted, convicted, and imprisoned for offenses related to drug-trafficking, based in part on the testimony and cooperation of Salwan Asker. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments C, E, H, and L to Keefe Declaration).

6. Various informants and/or sources informed law enforcement personnel that in early 1997, plaintiff contacted Salwan Asker by telephone at his out-of-state location and offered him $5,000 to $10,000 and travel expenses in an effort to lure him back to Detroit to provide a videotaped statement recanting his previous testimony against plaintiff's relatives who were in prison as a result of their criminal convictions. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments A, C, E, H, and L to Keefe Declaration; *see also* Attachment I for modus operandi of Kalasho organization).

7. Various informants and/or sources informed law enforcement personnel that days prior to his death, Salwan Asker returned to the Detroit metropolitan area at plaintiff's request. Plaintiff arranged and paid for [a] flight to Detroit and his stay at motels in the Detroit area. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments A, B, C, E, H, and L to Keefe Declaration).

8. Various informants and/or sources informed law enforcement personnel that during the days prior to his death, Salwan Asker was in frequently [sic] contact with plaintiff, both in person and by telephone. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments A, B, C, E, H, and L to Keefe Declaration).

9. Motel records and telephone records corroborated the above information. (Exhs. 3–6: Answers to Interrogs. No. 16, Keefe Declaration, ¶ 6; Attachments A, B, C, H, and L to Keefe Declaration).

10. Various informants and/or sources reported that shortly before his death, Salwan Asker expressed distrust and fear of plaintiff. (Exhs. 3–6: Answers to Interrogs. No. 16; Attachments A(¶¶ 5 and 9) and H (¶¶ 4 and 5) to Keefe Declaration).

11. Various informants and/or sources reported that plaintiff was in the presence of Salwan Asker on the day of his death, and during the days leading up to his death. (Exhs. 3–6: Answers to Interrogs. No. 16; Attachments A, H, and L to Keefe Declaration).

Regarding the information provided by confidential informants, this Court, as per Magistrate Judge Wallace Capel, Jr., denied Plaintiff's motion to compel discovery on March 30, 2001. However, there is evidence in the form of Plaintiff's exhibits three through six, which are signed answers to interrogatories admissible under Rule 56(c), that Defendants had knowledge of each of the eleven factors noted above that Defendants adduce to show that they had probable cause to arrest Plaintiff.

Plaintiff relies primarily on those same factors, and Defendant Mueller's deposition testimony to the effect that he knew before Plaintiff's arrest that it was possible that Mr. Asker had recorded a statement in which he recanted his trial testimony against Plaintiff's relatives. (Pl.Br. at 8–11.) This evidence, in Plaintiff's view, supports her theory that, far from there being probable cause to believe that she had murdered Mr. Asker, a reasonable jury would more likely conclude that "the factors articulated by the Defendants reveal a pattern of conduct in which [Plaintiff] befriended Mr. Asker, assisting him in a number of ways including paying for his accommodations, providing transportation, feeding him and, in general, acquiescing to his many demands occasioned by his drug dependency and resulting poor health." (Pl.Br. at 8.)

■ The Court's *in camera* review of Defendants' sealed materials regarding the confidential informants reveals that at least one informant told police that Mr. Asker had expressed distrust and fear of Plaintiff shortly before Mr. Asker was found with a bullet in the back of his skull. If credible, that piece of information, combined with Plaintiff's undisputed access to Mr. Asker, would suffice to create probable cause to believe that Plaintiff had committed the murder. *Cf. Johnson v. State*, 75 Wis.2d 344, 249 N.W.2d 593, 596–97 (1977) (concluding that probable cause ex-

isted where, *inter alia*, the victim expressed fear of the defendant shortly before her murder and the defendant was identified near the victim shortly before the murder); *People v. James*, 255 Ill. App.3d 516, 193 Ill.Dec. 786, 626 N.E.2d 1337, 1344–45 (1993) (concluding that probable cause to arrest the defendant for arson existed where police knew, *inter alia*, that the victim expressed fear of the defendant and the defendant was seen near the crime scene one-half hour before the arson); *Woodward v. State*, 668 S.W.2d 337, 337–47 (Tex.Ct.Crim.App.1982) (concluding that probable cause existed where, *inter alia*, the murder victim had expressed fear of the defendant and the defendant was found 90 miles from the crime scene). The question thus becomes whether, viewing the facts in the light most favorable to Plaintiff, that tip was credible.

■ In most cases, an informant's tip is credible enough to create probable cause if (1) the police have corroborated aspects of a detailed tip or (2) the informer had a record of providing reliable information. *United States v. Williams*, 114 F.Supp.2d 629, 633 (E.D.Mich.2000) (Gadola, J.). The Court's *in camera* review of the Keefe Declaration, which details what Defendants knew about their informants, shows that the informant who told police that Mr. Asker proclaimed his distrust of Plaintiff shortly before his murder was an informer who was highly reliable because of the informer's access to Mr. Asker and the detailed nature of the tip that the informer provided. Having corroborated details of this informer's tip, police were in a position from which it was reasonable for them to credit the informer. The other informants upon whom police relied also had a history of providing accurate tips during the DEA's investigation of the Kalasho drug trafficking organization in Detroit.

Because the Keefe Declaration shows that the informants were reliable, the Court concludes that, viewing the evidence in the light most favorable to Plaintiff, Defendants' conduct did not violate Plaintiff's constitutional right not to be seized and detained in the absence of probable cause. The Court also concludes that there is no genuine issue of material fact as to this issue because Plaintiff has not adduced evidence from which a reasonable jury could conclude that Defendants lacked probable cause to arrest and detain Plaintiff.

Plaintiff has therefore failed to overcome prong one of the qualified immunity analysis; i.e., she has not demonstrated that the facts, taken in the light most favorable to Plaintiff, show that Defendants' conduct violated a constitutional right to be free of seizure without probable cause. *A fortiori*, the Court holds in the alternative that Defendants violated no clearly-established right of Plaintiff's. Accordingly, prong two of the qualified-immunity analysis also shields Defendants from suit.

### ii. Whether Plaintiff's Claim Based on Defendants' Alleged "Verbal Harassment" of Her and Their Denial of Permission for Plaintiff to Contact Her Family While She Was Detained Survives Defendants' Assertion of the Doctrine of Qualified Immunity

■ As to Plaintiff's assertion of "verbal harassment," Plaintiff argues that Defendants "displayed their weapons, screamed and yelled" at Plaintiff, pounded on a table in front of Plaintiff, and detained Plaintiff overnight. Plaintiff maintains that all of these acts were "tactics" that violated the Fourth Amendment. Plaintiff adduces no authority for the proposition that any of these acts violates the Constitution, and

the Court is aware of none. In fact, policemen's mere display of a holstered weapon and verbal abuse of a suspect, at least during the process of arresting that suspect, do not violate the Fourth Amendment. *See Collins v. Nagle,* 892 F.2d 489, 496–97 (6th Cir.1989).

 Regarding Defendants' alleged refusal to allow Plaintiff to call her relatives,[3] Plaintiff relies on one case to establish a pretrial detainee's right to call relatives. That case is *Tucker v. Randall,* 948 F.2d 388 (7th Cir.1991). In *Tucker,* however, the pretrial detainee was not allowed to call anyone, including his lawyer, for four days. *Id.* at 389. Here, the evidence shows that Plaintiff was not allowed to call any *family members* during her detention. There is no credible evidence that Defendants refused to allow Plaintiff to call a lawyer. This case is thus more like *Harrill v. Blount County,* 55 F.3d 1123 (6th Cir.1995), in which a pretrial detainee was not allowed to call her father but could have called a lawyer. *Id.* at 1125. In that case, the Sixth Circuit held that the plaintiff's Fourteenth Amendment rights were not violated. Because of the factual similarities between this case and *Harrill,* the Court holds that Defendants' refusal to allow Plaintiff to call her relatives did not violate the Constitution.

Because Plaintiff has failed to adduce evidence that, viewed in the light most favorable to Plaintiff, could establish a violation of the Fourth or Fourteenth Amendments on the basis of Defendants' alleged "verbal harassment" or refusal to allow Plaintiff to contact her family members, the Court concludes that Defendants' "tactics" have violated no right of Plaintiff's and Defendants are therefore insulated from suit.

*A fortiori,* the Court holds in the alternative that the doctrine of qualified immunity also shields Defendants from suit because Defendants violated no clearly established right of Plaintiff's to be free of "verbal harassment" or to be allowed to call family members.

## IV CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED.**

**SO ORDERED.**

---

**3.** In her brief, although not in her response itself, Plaintiff relies on page 110 of Defendant Edwards's deposition testimony for the proposition that Defendants refused to allow her to contact a lawyer. The Court rejects this argument because any honest reading of that page will indicate that this assertion is incorrect and that Defendant Edwards actually testified that Defendants *would have* allowed Plaintiff to call her lawyer had she so requested. (Pl.Exh. I at 110:1–22.)