980 F.2d 731
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Louise PIRSEIN, Personal Representative of the Estate of
Alan Edward Pirsein, Deceased, Plaintiff-Appellant,
v.
VILLAGE OF BERRIEN SPRINGS, et al., Defendants-Appellees.
 No. 92-1258.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1992.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment for the defendants in a civil rights action that arises out of the fatal shooting of the plaintiff's decedent by a police officer. Concluding that no genuine issue was shown as to any material fact and that the defendants were entitled to judgment as a matter of law, we shall affirm the district court's disposition of the case.
 
 
 2
 * At 3:30 a.m. on October 7, 1987, Officer Raymond Keigley saw Alan Edward Pirsein walking down the middle of a rural two-lane road in Michigan during a hard rainstorm. Officer Keigley, who was on patrol alone, stopped and asked Mr. Pirsein what he was doing. Mr. Pirsein answered that he was walking to Ohio to cash a check. Concluding that the man was emotionally disturbed, the officer decided to take him back to town.
 
 
 3
 In order to search him for weapons before putting him in the back seat, Officer Keigley asked Mr. Pirsein to step to the front of the patrol car. Mr. Pirsein started to comply, but as the officer opened the car door to get out, according to the officer's later deposition testimony, Mr. Pirsein suddenly ran back to the door and began slamming it against Officer Keigley's left arm and leg. When the officer pulled back into the car, according to the testimony, Mr. Pirsein began striking the vehicle with what turned out to be a tire iron. After several blows to the body of the car, Mr. Pirsein knocked out the glass of the window on the driver's side and struck at Officer Keigley. The officer leaned to his right trying to escape the blows, he testified, at which point Mr. Pirsein started flailing at him with a three-inch pocketknife.
 
 
 4
 Fending off the attack as best he could, Officer Keigley drew his service revolver, pointed it at Mr. Pirsein, and fired all six rounds in rapid succession. Five of the shots hit Mr. Pirsein, and he died within ten to fifteen minutes.
 
 
 5
 Alleging a violation of federal and state law, Mr. Pirsein's mother brought suit against Officer Keigley, his chief of police, his police department, and the governmental bodies responsible for running the department. When the district court (Robert Holmes Bell, J.) entered summary judgment for the defendants, Mrs. Pirsein perfected a timely appeal.
 
 II
 
 6
 In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Id. at 395 (emphasis in original). The proper application of the reasonableness standard, Graham teaches,
 
 
 7
 "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.... The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.
 
 
 8
 The "reasonableness" inquiry in an excessive force case is an objective one; the subjective state of mind of the officer is not considered. Id. at 397.
 
 
 9
 Mrs. Pirsein argues here that material issues of fact were raised by certain inconsistencies between Officer Keigley's deposition testimony and reports filed by policemen who had interviewed Officer Keigley about the incident. And even if the officer's deposition testimony was accurate, she says, there was a material issue of fact as to whether it was reasonable for Officer Keigley to shoot at Mr. Pirsein as many as six times.
 
 
 10
 It is clear, we believe, that a reasonable officer in Mr. Keigley's highly vulnerable position would have been justified in emptying his revolver at a man who had struck at him with a tire iron and was slashing at him with a knife. The officer could hardly know in advance how many shots it would take to stop the assailant--and the fact is, as a medical examiner's report noted, that
 
 
 11
 "None of the wounds were immediately fatal. The lack of bullet performance and non-lethal or non-assault stopping nature of the wounds indicates that the deceased was probably capable of carrying on his assault throughout the time of the shooting. The fact that the deceased was found some distance from the site of shooting bears out these facts."
 
 
 12
 Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir.1988), on which the plaintiff relies heavily, also involved a police officer who shot and killed a knife-wielding mentally ill person on a deserted street in the middle of the night. Although summary judgment was held inappropriate there, the facts of that case differ significantly from those presented here. The decedent in Samples had not physically struck the officer when the officer began to shoot. The decedent was advancing on the officer with a pocket knife, but did not have the blade fully extended. The officer outweighed the decedent by about 100 pounds and might well have subdued him without shooting. One of the five bullets fired in Samples, moreover, struck the decedent in the back. Id. at 1332.
 
 
 13
 In the case at bar the decedent had trapped the officer in his car, had hit him with a tire iron, and, according to the testimony of the only remaining eyewitness, was slashing at him with an open pocketknife. Although one of the bullets fired by the officer entered the decedent from a posterolateral angle, the medical examiner performing the autopsy noted that such an entry was consistent with the decedent's being shot while delivering a back-handed blow.
 
 
 14
 The minor inconsistencies in the various reports of the incident and the imperfect correlation of the physical evidence with Officer Keigley's version of the events do not give rise to a genuine issue of a material fact. The circumstances pointed to by the plaintiff--the superficial nature of Officer Keigley's wounds, the lack of powder residue, and the statement in one police report that Officer Keigley used his right hand to shield himself rather than his left hand, as he testified at his deposition--simply do not cast substantial doubt on the essential facts as related by the officer.
 
 
 15
 * * *
 
 
 16
 Mrs. Pirsein argues that the district court erred in granting summary judgment for the remaining defendants because the police department had a policy or custom that sanctioned the shooting of all fleeing felons, while the department had no policy for dealing with mentally ill persons.
 
 
 17
 The Supreme Court has told us that the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). Neither the department's alleged policy of allowing officers to shoot all fleeing felons nor the department's failure to institute a policy regarding mentally ill individuals was responsible for any constitutional deprivation here.
 
 
 18
 Mr. Pirsein was not a fleeing felon. He was attacking, not fleeing. An improper policy on people in flight could hardly cause the death of a person on the attack.
 
 
 19
 Likewise, the plaintiff has failed to show any causal link between Mr. Pirsein's death and the department's lack of a policy governing interaction between officers and the mentally ill. Both at his police academy and in seminars while he was on the force, Officer Keigley had been trained in how to deal with mentally disturbed individuals. When he encountered Mr. Pirsein, Officer Keigley intentionally spoke in a nonthreatening tone, as he had been taught. There has been no showing that Officer Keigley should have responded differently once he determined that Mr. Pirsein had a mental problem. In fact, the officer had very little opportunity to alter his behavior in the brief exchange that occurred before the encounter turned violent. The instant case is thus distinguishable from Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir.1992), where officers were dealing with a mentally ill individual who had barricaded himself in an apartment and the confrontation spanned a considerable period of time.
 
 
 20
 Accordingly, and for all of the reasons stated in Judge Bell's comprehensive opinion, the judgment of the district court is AFFIRMED.