**Joseph GADDIS, by his next friend and guardian, ERMA GADDIS, Plaintiff,**

v.

**REDFORD TOWNSHIP, a municipal corporation, City of Dearborn Heights, a municipal corporation; Matthew Bain, in his official and individual capacities; John Burdick, in his official and individual capacities; and Richard Duffany, in his official and individual capacities, jointly and severally, Defendants.**

No. CIV. 00–40375.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 20, 2002.

Justin C. Ravitz, Sommers, Schwartz, Southfield, MI, for plaintiffs.

Ethan Vinson, Cummings, McClorey, Livonia, MI, for Township of Redford, defendant.

Eric D. Smith, Hopkins, Curran, Southfield, MI, for City of Dearborn Heights, Richard Duffany, defendants.

John H. Dise, Jr., Dise Assoc., Southfield, MI, for Matthew Bain, defendant.

Richard J. Corriveau, Northville, MI, Eric D. Smith, Hopkins, Curran, Southfield, MI, for John Burdick, defendant.

## *OPINION AND ORDER*

GADOLA, District Judge.

Before the Court are Defendants' motions for summary judgment. The Court held a hearing on these motions on February 13, 2002. For the reasons set forth below, the Court grants Defendants' motions.

## I BACKGROUND

As discussed during the hearing, the following facts are not in dispute.

Defendants Redford Township and City of Dearborn Heights are municipal corporations. Defendants John Burdick and Richard Duffany are policemen for Defendant City of Dearborn Heights. Defendant Matthew Bain is a policeman for Defendant Redford Township. All Defendant policemen are white. Plaintiff is black. The parties have stipulated that Plaintiff is incompetent to testify.

Early on the morning of April 21, 1999, Defendant Bain saw Plaintiff weaving his car within Plaintiff's lane and simultaneously, according to Defendant Bain's uncontradicted testimony, leaning over the front passenger seat. Defendant Bain thought that Plaintiff might be driving drunk. Defendant Bain then pulled alongside Plaintiff's auto and observed that Plaintiff was leaning to his right so far that Defendant Bain was unable to see what Plaintiff was doing.

Defendant Bain pulled behind Plaintiff's auto, activated his blinking lights and siren, and used his air horn. Plaintiff did not stop, however, until he reached a red light. At that point, Defendant Bain approached Plaintiff's auto on foot. Before Defendant Bain reached Plaintiff's passenger door, the light turned green and Plaintiff drove off. Defendant Bain ran back to his car and continued to follow Plaintiff. Within two blocks, Plaintiff pulled over.

Defendant Bain then exited his vehicle and approached Plaintiff's car. When Defendant Bain left his vehicle, he had his sidearm drawn. Defendant Bain then holstered the weapon, kept his right hand on it, and approached Plaintiff's vehicle with a flashlight in his left hand. Defendant Bain's uncontradicted testimony is that he asked Plaintiff for a driver's license and registration. Plaintiff stated to Defendant Bain that he had a suspended driver's license, although it later (after the incident) became clear that this was not actually the case. After some delay, Plaintiff passed a document to Defendant Bain. Defendant Bain looked at the document and then placed it in his back pocket. Although Defendant Bain is unable now to identify that document, Defendant Bain's

uncontradicted testimony is that Plaintiff had handed him an expired driver's license. Defendant Redford Township has produced such a license.

Defendant Bain then ordered Plaintiff to exit his auto. Plaintiff complied. When Plaintiff left the vehicle, he placed his hands in his pockets. Defendant Bain then grabbed Plaintiff and pulled Plaintiff toward him briefly. According to Defendant Bain's uncontradicted deposition testimony, he did so because Plaintiff was not complying with his verbal demands and because he wanted to frisk and arrest Plaintiff.

Almost simultaneously, Defendant police officers John Burdick and Richard Duffany of the City of Dearborn Heights police department arrived as back up to Defendant Bain. Plaintiff removed his hands from his pockets. Defendants Bain and Burdick drew their sidearms and stepped back from Plaintiff. Defendant Duffany also leveled his sidearm at Plaintiff. The police officers' uncontradicted deposition testimony [1] is that Plaintiff remained standing in the doorway of his vehicle with a shiny object in his hand, and that they believed this object to be a knife or other weapon. Shortly thereafter, a fourth policeman, Paul Champoux, arrived on the scene. Officer Champoux parked his vehicle to the left front of Plaintiff's, exited the vehicle, and leveled a shotgun at Plaintiff.

Although the officers demanded that Plaintiff drop his weapon, Plaintiff did not do so. Instead, Plaintiff said words to the effect of "why are you doing this to me, Chris, like you did to me in California?" None of the officers were named Chris, nor had any of the officers ever encountered Plaintiff in California. The officers continued to demand that Plaintiff drop the weapon.

Defendant Bain's uncontradicted testimony is that Plaintiff then said that he wanted to leave. To prevent that, Defendant Bain sprayed Plaintiff with an eye irritant. Seconds later, Defendant Burdick came over the back of Plaintiff's auto and tried to grab Plaintiff. Plaintiff responded by stabbing Defendant Burdick. Almost immediately thereafter, Defendants Bain and Duffany fired sixteen rounds at Plaintiff. Defendant Bain fired ten of those rounds; Defendant Duffany fired six. At least some of those rounds hit Plaintiff, causing Plaintiff injury. Defendant Burdick, who was wearing a protective vest, was not seriously wounded when Plaintiff stabbed him. Redford Township Police Department evidence technician Jeffrey Wanbaugh's uncontradicted testimony is that he recovered a knife from the street near Plaintiff's car at 4:45 a.m.

On June 8, 1999, the 17th District Court for the County of Wayne bound Plaintiff over on charges of assault with intent to murder and fleeing and eluding, finding that probable cause existed to support the elements of both charges. Eventually, Plaintiff was found guilty at a bench trial of felonious assault and not guilty of fleeing and eluding. Pursuant to a motion for judgment notwithstanding the verdict, however, the trial court later ruled that Plaintiff was not guilty of felonious assault.

On October 26, 2000, Plaintiff filed his complaint in this case. In count I of the complaint, Plaintiff avers that Defendants Bain, Burdick, and Duffany violated 42 U.S.C. § 1983 by violating Plaintiff's rights to be free of: (1) illegal detention, arrest, incarceration, and prosecution; (2) excessive force, bodily harm, and injury; (3) discrimination because of his race; and (4)

---

1. There also are videotapes of this incident as recorded from two different police cars, but it is impossible to conclude from these tapes whether Plaintiff had a knife in his hand or not.

discrimination because of his mental illness. In count II, Plaintiff avers that Defendants Redford Township and City of Dearborn Heights violated 42 U.S.C. § 1983 by maintaining various customs or policies that contributed to Plaintiff's harms.

Plaintiff also brought a plethora of state-law claims. Those state-law claims substantially predominated over the federal law claims at bar. Pursuant to 28 U.S.C. § 1367(c)(2), therefore, this Court dismissed those state-law causes of action on November 2, 2000.

## II LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing con-clusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving

party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 150 (6th Cir.1995).

## III ANALYSIS

### A. Defendant Officers

Defendant officers assert that no reasonable jury could conclude for Plaintiff on any of his theories, and that they are entitled to qualified immunity from suit. The Court first assesses whether a reasonable jury could return a verdict in Plaintiff's favor under any of his theories.

■ To succeed with a § 1983 claim, a plaintiff must prove that the defendant or defendants, while acting under color of state law, deprived him of a right secured by federal law. 42 U.S.C.S. § 1983 (Law. Co-op.1994 & Supp.2001). In his response brief, Plaintiff identifies what he claims are the genuine issues of material fact regarding his § 1983 claim against Defendant officers. First, he argues that there is a genuine issue of fact as to whether Defendant Bain's initial stop of Plaintiff was appropriate. (Pl. Br. at 2.) He also maintains that, "[i]n this case, the evidence, including the videotape and the affidavit of Dr. Fyfe [Plaintiff's expert] generates genuine issues of material fact. Did Mr. Gaddis have a knife in his hand? Even if he had a knife in his hand, did Defendants violate the Fourth Amendment when they shot him numerous times, and in their overall handling of the incident?" (Pl. Br.

at 24.) The Court addresses each of these issues in sequence.

■ Plaintiff's first identified issue of material fact is whether Defendant Bain's initial stop of Plaintiff's auto was proper. A policeman's stop of a vehicle and its occupants, regardless of its limited duration and purpose, is a seizure of persons under the Fourth Amendment and must therefore be reasonable. *United States v. Williams,* 114 F.Supp.2d 629, 630–31 (E.D.Mich.2000) (Gadola, J.). Authorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.

During oral argument, Plaintiff's counsel cited *United States v. Freeman,* 209 F.3d 464 (6th Cir.2000). In *Freeman,* a panel of the Sixth Circuit held that "the motor home's brief entry into the emergency lane does not constitute probable cause that [the defendant] was intoxicated," and therefore reversed the district court's order denying the defendant's motion to suppress evidence flowing from the stop of that vehicle. *Id.* at 466. At least one judge in this jurisdiction interprets *Freeman* as requiring probable cause to justify a traffic stop. As the Honorable Avern Cohn put it in *United States v. Sosa,* 104 F.Supp.2d 722 (E.D.Mich.2000), "[t]he analysis in *Freeman* illustrates the only relevant inquiry in the wake of *Whren.* The issue is no longer one of pretext, but rather of whether probable cause existed for the traffic stop, and whether police testimony on this issue is credible." *Id.* at 728 n. 8.

On the other side of the ledger, however, the U.S. Supreme Court has held that policemen "may briefly stop a moving automobile to investigate a *reasonable suspicion* that its occupants are involved in criminal activity." *United States v. Hens-*

*ley,* 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (emphasis added); *accord Alabama v. White,* 496 U.S. 325, 328–32, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Although these decisions predate the Supreme Court's seminal opinion in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), *Whren* has not invalidated *Hensley* or *White.* The *Whren* Court, after all, reasoned merely that "[a]s a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. Although the *Whren* Court held that probable cause of a traffic violation is *sufficient* to justify a stop, it did not hold that probable cause is a *necessary* precondition to a stop. *United States v. Callarman,* 273 F.3d 1284, 1286 (10th Cir.2001) (Tacha, J.).

It is thus unsurprising that several post-*Whren* panels of the Sixth Circuit have held that reasonable suspicion is all that is needed to justify a traffic stop, *see, e.g., United States v. Hill,* 195 F.3d 258, 263–64 (6th Cir.1999); *United States v. Potts,* No. 97–6000, 1999 WL 96756, at *3 (6th Cir. Feb.2, 1999) (Clay, J.), as had at least one pre-*Whren* panel, *see United States v. Roberts,* 986 F.2d 1026, 1030 (6th Cir. 1993). Other courts have reached the same conclusion. *See, e.g., Callarman,* 273 F.3d at 1286; *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir.2000); *United States v. Jones,* 147 F.Supp.2d 752, 757 (E.D.Mich.2001) (Gadola, J.); *Cuautle v. Tone,* 851 F.Supp. 1236, 1239 n. 1 (C.D.Ill.1994).

■ In short, the Supreme Court requires, and most panels of the Sixth Circuit that have considered the matter require, only that reasonable suspicion motivate a policeman's stop of a vehicle.

This Court therefore concludes that it must assess whether Plaintiff has adduced evidence from which a reasonable jury could decide that Defendant Bain lacked reasonable suspicion to stop Plaintiff's vehicle.

■ Whether reasonable suspicion existed hinges on whether, considering the totality of the circumstances, the police had "articulable reasons" and "a particularized and objective basis for suspecting [a suspect] of criminal activity." *United States v. Payne,* 181 F.3d 781, 788 (6th Cir.1999) (citation omitted). Defendant Bain avers that he had a reasonable suspicion to believe that Plaintiff was driving drunk[2] and stopped him for that reason. Defendant Bain adduces his deposition testimony and the video tape from his police cruiser in support of that contention.

■ Defendant Bain testified that Plaintiff was weaving within the lane markers and simultaneously leaning over the front passenger seat, both before and while Defendant Bain pulled the police cruiser alongside Plaintiff's moving car. (Bain Dep. at 63–66.) The videotape shows that Plaintiff's car twice touched the white lane-marker. Neither in his response brief nor during oral argument did Plaintiff point to any countervailing evidence.

The Court therefore holds that, as a matter of law, Defendant Bain had reasonable suspicion to stop Plaintiff's vehicle. Although the videotape shows that Plaintiff's weaving within his lane was not terribly agitated, it is clear that Plaintiff's left tires touched the line marker at least twice. That evidence, simpliciter, is sufficient to establish that Defendant Bain had reasonable suspicion to stop Plaintiff's auto. *See Babers v. City of Tallassee,* 152

**2.** Drunk driving is illegal under the law of Michigan. *See, e.g., People v. Hamilton,* 465

Mich. 526, 638 N.W.2d 92, 96 (2002).

F. Supp 2d 1298, 1305 (M.D.Ala.2001) (finding, on the defendants' motion for summary judgment, that "Plaintiff's erratic braking provided Royal with reasonable suspicion to stop Plaintiff for driving under the influence"); *Cottrell v. Kaysville City,* 801 F.Supp. 572, 574 (D.Utah 1992) (finding reasonable suspicion of drunk driving based on the suspect's erratic driving), *rev'd on other grounds,* 994 F.2d 730 (10th Cir.1993); *see also United States v. Banks,* 971 F.Supp. 992, 996 (E.D.Va.1997) (finding reasonable suspicion of drunk driving where the suspect was "traveling slower than the posted speed limit and weaving within [his] own lane"); *Commonwealth v. Starr,* 739 A.2d 191, 195 (Pa.Super.1999).

Beyond Plaintiff's slight weaving in his lane, moreover, the uncontradicted evidence also shows that Plaintiff leaned over the front passenger seat even as Defendant Bain pulled next to Plaintiff. Courts have held that a suspect who leans down within his car as a policeman approaches may, at least in conjunction with other acts, create reasonable suspicion that unlawful activity is afoot. *See United States v. Hoosman,* 62 F.3d 1080, 1082 (8th Cir. 1995); *United States v. Stanley,* 915 F.2d 54, 56 (1st Cir.1990).

Although these cases did not involve suspicions of drunk driving, the salient logic is nonetheless apposite: a suspect who leans down within his auto as a policeman nears may well create reasonable suspicion in that officer's mind that unlawful activity is afoot. The Court concludes that Plaintiff's leaning down within his auto as Defendant Bain approached, coupled with his weaving within his lane, created reasonable suspicion to stop Plaintiff for drunk driving. Given Plaintiff's failure to adduce countervailing evidence on this point, the Court holds that no reasonable jury could conclude otherwise.

The Court now turns to Plaintiff's second identified issue of material fact:

whether Plaintiff was holding a knife. The officers' uncontradicted testimony is that he was, and the uncontested evidence is that Plaintiff did, in fact, stab Defendant Burdick. Although the videotape of the events in question is so poor that it does not show that Plaintiff had a knife in hand, Plaintiff himself concedes that he "does not claim that the inability to see a knife on the video film proves there was no knife." (Pl. Br. at 7 n. 6.) The Court also observes that the video shows that Plaintiff, beyond peradventure, made a striking motion toward Defendant Burdick. Accordingly, all relevant evidence in the record points to the conclusion that Plaintiff was, indeed, holding a knife. The Court holds that there is no material issue of fact as to whether Plaintiff was holding a knife.

■■■ Plaintiff's third identified issue of material fact is whether Defendants Bain and Duffany's shooting of Plaintiff violated the Fourth Amendment. To succeed on a claim of excessive force, a plaintiff must establish by a preponderance of the evidence that the officers' actions, considering the totality of the circumstances, were objectively unreasonable. *Graham v. Connor,* 490 U.S. 386, 394–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Relevant to this inquiry is "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* One must assess these factors "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.; Williams v. Belknap,* 154 F.Supp.2d 1069, 1072 (E.D.Mich.2001) (Gadola, J.).

■ The Court begins with "the severity of the crime at issue." As noted above, on June 8, 1999 the 17th District Court for the County of Wayne bound Plaintiff over for trial on charges of assault with intent to murder and fleeing and eluding, finding that probable cause existed to support the elements of both charges. The record shows that Plaintiff had counsel and a full and fair opportunity to litigate the issue at his preliminary examination. Plaintiff thus is estopped from denying that the officers had probable cause to believe that Plaintiff was trying to commit the very severe crime of assault with intent to commit murder when they shot him.[3] *See White v. Tamlyn*, 961 F.Supp. 1047, 1054–55 (E.D.Mich.1997) (Gadola, J.); *see also Stemler v. City of Florence*, 126 F.3d 856, 871 n. 13 (6th Cir.1997) (reasoning that "a state court proceeding is accorded preclusive effect in a later § 1983 suit so long as it meets minimal standards of due process").

As to the question of the threat that Plaintiff posed to police, the uncontested evidence shows that this threat was quite high. Plaintiff, after all, incontrovertibly stabbed Defendant Burdick. Accordingly, on the state of this record, there is no evidence from which a reasonable jury could conclude that Defendants Bain or Duffany used excessive force when they shot Plaintiff. *See Brandenburg v. Cureton*, 882 F.2d 211, 215 (6th Cir.1989) (reasoning that "[t]he use of deadly force is reasonable if an officer believes that there is a threat of serious physical harm to the officer or others"). The Court holds that there is no genuine issue of material fact as to this point.

Plaintiff's fourth identified issue of material fact is whether Defendant officers' "overall handling of the incident" violated the Fourth Amendment. Plaintiff argues that this case is analogous to *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992).

In *Russo*, the police forced open the door of a suspect, whom they knew to be a paranoid schizophrenic, after that suspect had barricaded himself, alone, inside his apartment. *Id.* at 1040. The police then saw that the suspect was armed with two knives. *Id.* The police fired two Taser darts into the suspect. The suspect shook off the effects of the Taser and, still armed with two knives, charged out at an officer. *Id.* Two officers fired a volley of bullets at the suspect. *Id.* The suspect fell down a flight of stairs and then, according to the officers, stood up, still holding one knife. *Id.* The officers asked the suspect to drop the knife and promised medical attention. *Id.* at 1040–41. Then the police fired another Taser into the suspect. *Id.* at 1041.

After that, according to the officers, the knife-wielding suspect charged up the stairs toward police. *Id.* The officers fired another volley of bullets. *Id.* The suspect then, according to police, fell back down the steps, but again picked up his knife and advanced on the police. *Id.* At this point, the police fired a third volley of bullets, fatally wounding the suspect. *Id.* These events transpired over a ten-to-twelve minute period. *Id.* at 1045.

Critically, the *Russo* plaintiffs adduced competent evidence to the effect that, after the suspect had been shot with the first volley of bullets, he had not stood up or charged the officers. *Id.* at 1041.

---

**3.** As discussed above, the Circuit Court for the County of Wayne convicted Plaintiff of the lesser included offense of felonious assault and acquitted him of the other offenses. Ultimately, Plaintiff was acquitted of even the felonious assault offense pursuant to a motion for judgment notwithstanding the verdict. Plaintiff's acquittal, however, is of no moment to the Court's consideration of whether probable cause existed to arrest him.

The *Russo* court held that there was "a genuine issue of fact as to whether, *in the second and third round of discharges* of the officers' revolvers, the officer may have shot [the suspect] even though he posed no serious threat of physical harm." *Id.* at 1045 (emphasis added). In other words, the Sixth Circuit held that, where there is competent evidence that police fired two additional volleys of bullets at a man who was lying prone with bullet wounds, a reasonable jury could conclude that those two additional volleys constituted excessive force under the Fourth Amendment.

This case is factually distinct from *Russo*. In this case, the uncontested evidence shows that Defendant officers fired only one volley at Plaintiff, and that they did so immediately after Plaintiff had stabbed a policeman.

Another case on which Plaintiff relies is *Samples v. City of Atlanta,* 846 F.2d 1328 (11th Cir.1988). In *Samples,* the Eleventh Circuit held that summary judgment was inappropriate where a policeman fatally shot a knife-wielding person who appeared to be emotionally disturbed. *Id.* at 1332–33. In *Samples,* however, the suspect had not physically struck anybody before the officer began firing, the blade of the suspect's pocket knife was not fully extended, the officer outweighed the suspect by almost 100 lbs., and one of the bullets struck the suspect in the back. *Id.*

Neither *Russo* nor *Samples* is apposite to these facts. Instead, this case is analogous to *Pirsein v. Village of Berrien Springs,* No. 92–1258, 1992 WL 348944 (6th Cir. Nov.24, 1992). In *Pirsein,* the policeman concluded that the decedent was an emotionally disturbed person after the officer observed him walking on a rural road during a hard rainstorm and the decedent had stated that he was "walking to Ohio to cash a check." *Id.* at *1. The policeman therefore decided to search the decedent and take him back to town. *Id.*

Before the officer could do so, however, the decedent attacked the patrol car with a tire iron, struck the officer with the tire iron, and then tried to stab the officer with an open, three-inch pocketknife. *Id.* At that point, the policeman fired six rounds in rapid succession. *Id.* Five of those rounds hit the decedent, who died within minutes. *Id.*

The Sixth Circuit upheld summary judgment in favor of the policeman, concluding that there was no issue of material fact as to whether the policeman had used excessive force. The Sixth Circuit distinguished the case from *Samples,* observing that the suspect in *Samples* had not struck the officer before the shooting occurred. The Sixth Circuit also distinguished the case from *Russo,* noting that in *Russo* the police were dealing with a man who had barricaded himself in his apartment, whereas in *Pirsein* "the officer had very little opportunity to alter his behavior in the brief exchange that occurred before the encounter turned violent." *Id.* at *3.

In important respects, this case is similar to *Pirsein.* As in *Pirsein,* the uncontested evidence in this case shows that Defendant officers "had very little opportunity to alter [their] behavior in the brief exchange before the encounter turned violent." The videotapes provided by both parties conclusively show that this encounter turned violent within four minutes of Defendant Bain's stop of Plaintiff's auto. As in *Pirsein,* the uncontested evidence shows that Defendant officers did not employ deadly force until *after* the knife-wielding suspect had struck one of the officers.

This case is unlike *Pirsein* insofar as there were four officers on the scene here, and there was only one in *Pirsein.* The Court, however, accords little weight to that distinction. Although Defendant Burdick was not seriously hurt in this incident,

like the officer in *Pirsein,* he easily could have been had the suspect not been shot. *Cf.* Ben Schmitt, *To End, Officer Embraced Duty,* Detroit Free Press, Feb. 14, 2002, at 1A (officer stabbed to death in course of traffic stop). Defendants' uncontested evidence shows that when the police shot Plaintiff, he had just stabbed Defendant Burdick, still appeared to be holding a knife, and was in close proximity to Defendant Burdick. Under these circumstances, as under the circumstances at bar in *Pirsein,* no reasonable jury could conclude that the officers did not reasonably fear that Plaintiff posed a serious physical danger to Defendant Burdick or that Defendants Bain and Duffany's use of deadly force violated the Fourth Amendment. *See Brandenburg,* 882 F.2d at 215.

The Court turns to Plaintiff's arguments regarding the Equal Protection Clause. The crux of Plaintiff's position is that Defendant Bain stopped, and the other Defendant officers used force against, Plaintiff because Plaintiff was black and appeared to be mentally disturbed, and not because of any of the legitimate reasons that the officers put forth. (Pl. Br. at 37.) Thus has Plaintiff put forth a claim of selective enforcement. *See West v. Duncan,* 179 F.Supp.2d 794, 806 (N.D.Ohio 2001).

Plaintiff has failed, however, to adduce evidence that any Defendant did not enforce the law in a similar manner against similarly-situated people outside of Plaintiff's classes. That failure entitles Defendants to summary judgment as to this cause of action. *Id.; see also Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999) (reasoning that an Equal Protection Clause claim requires evidence of intentional discrimination).

Finally, the Court considers Plaintiff's allegations of false arrest and bad-faith prosecution. On pages thirty-three through thirty-six of his brief, Plain-

tiff addresses this matter. As to the claim of false arrest, as discussed above, Plaintiff is collaterally estopped from asserting that the police lacked probable cause to arrest Plaintiff. Regarding bad-faith prosecution, Plaintiff argues that the police lied about Plaintiff's having had a knife and having stabbed Defendant Burdick in an effort to cover up their own misconduct. For reasons discussed above, the Court holds that a reasonable jury could not find for Plaintiff on these theories.

In short, Defendant officers are entitled to summary judgment as to all of Plaintiff's claims against them. Because of that, it is not necessary for the Court to probe these officers' claims of qualified immunity.

## B. Defendant Municipalities

Because the Court shall grant summary judgment to Defendant officers, it must grant summary judgment to Defendant municipalities as well. *See Scott v. Clay County,* 205 F.3d 867, 879 (6th Cir.2000).

## IV CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motions for summary judgment are **GRANTED.**

**SO ORDERED.**